1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11   GELASIO SALAZAR and SAAD          )   Case No. 12-CV-01628-GPC-WVG
     SHAMMAS, individually and on      )
12   behalf of all other similarly situated   )   **ORDER GRANTING**
     current and former employees of   )   **PLAINTIFFS' MOTION TO**
13   Defendants in the State of California,   )   **REMAND**
                                        )
14                     Plaintiffs,      )
                                        )   **(ECF NO. 7)**
15   v.                                 )
                                        )
16   AVIS BUDGET GROUP, INC., a         )
     Delaware Corporation; AVIS         )
17   BUDGET CAR RENTAL, LLC, a          )
     Delaware Limited Liability Company   )
18   (formerly known as CENDANT         )
     RENTAL SERVICES, INC.);            )
19   BUDGET RENT A CAR SYSTEM,          )
     INC., a Delaware Corporation; and   )
20   AVIS RENT A CAR SYSTEM, LLC,       )
     a Delaware Limited Liability        )
21   Company,                           )
                                        )
22                     Defendants.      )
                                        )
23

24                   **INTRODUCTION**

25        Presently before the Court is Plaintiffs' Motion to Remand, which has been fully

26   briefed,  (ECF Nos. 7, 11, 12), and which the Court finds suitable for disposition

27   without oral argument, see CivLR 7.1.d.1.  After a careful review of the parties'

28   submissions and the record in this matter, and for the reasons that follow, the Court

**GRANTS** Plaintiffs' Motion to Remand.

## **BACKGROUND**

On November 27, 2006, Plaintiffs filed a putative wage-and-hour class action complaint in the Superior Court of California, San Diego County. (ECF No. 7-4.) On January 10, 2007, Defendants removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), and the case was assigned to Judge Gonzalez.[1]  On May 14, 2008, Plaintiffs filed their currently operative First Amended Complaint ("FAC"), in which Plaintiffs allege Defendants failed to comply with various California wage-and-hour laws. (ECF No. 7-5.)  That same month, Plaintiffs also filed a motion for class certification of Plaintiffs' meal period claims only, which Judge Gonzalez denied, and which the Ninth Circuit declined to review on an interlocutory basis. (ECF Nos. 7-6, 7-7.)  Thereafter, on November 20, 2008, Judge Gonzalez remanded the case to the San Diego Superior Court. (ECF No. 7-8.)  After remand, the state court stayed the action because the California Supreme Court was set to review Brinker v. Superior Court, 53 Cal. 4th 1004 (2012), a case addressing whether meal period violations are amenable to class treatment.

On April 12, 2012, the California Supreme Court published its opinion in Brinker, and, two weeks later, the state court lifted the stay on Plaintiffs' action.  On June 4, 2012, Plaintiffs informed Defendants they intended to seek leave to amend their FAC in conjunction with filing a renewed class certification motion.   Because Defendants refused to stipulate to the filing of a second amended complaint ("SAC"), Plaintiffs filed a motion for leave to amend their complaint, including a proposed SAC, on June 13, 2012.

The proposed SAC indicated Plaintiffs would: (1) pursue class-wide claims for meal periods only (and not business reimbursement claims), (2) forego their punitive damages claim, and (3) forego claims for attorneys' fees pursuant to the California Labor Code section 218.5.  Indeed, Plaintiffs assert the proposed SAC significantly

---

[1] The prior District Court case number is 3:07-cv-0064-IEG-WMC.

reduces the potential damages, penalties, interest, and related costs and attorneys' fees to less than $5 million.

On June 15, 2012, Plaintiffs filed a renewed motion for  class certification ("Renewed Motion") in light of Brinker, asserting class treatment is appropriate in this case.  On June 29, 2012, Defendants used the Renewed Motion as a basis to again remove the case to federal court pursuant to CAFA.  On July 20, 2012, Plaintiffs filed the instant Motion to Remand.

## DISCUSSION

### I.    Legal Standard

Only state court actions that could originally have been filed in federal court can be removed to federal court.  28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  Removal is governed by 28 U.S.C. § 1441 et seq.  The removal statutes are to be "strictly construe[d] . . . against removal jurisdiction," and the removing party "always has the burden of establishing that removal was proper."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Id.

CAFA vests district courts with original subject-matter jurisdiction over class actions when:  (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs; (2) there is a putative class with more than 100 members; and (3) there exists minimal diversity, i.e., any member of a putative class is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2).

### II.        Analysis

Plaintiffs do not dispute that the putative class is comprised of more than 100 members or that minimal diversity exists.  The parties do dispute whether the action was timely removed in light of Plaintiffs' Renewed Motion.  The Court need not resolve this dispute, however, because the Court concludes Defendants have not satisfied their burden of proving the amount in controversy exceeds $5 million.

The removing party bears the burden of demonstrating the amount in controversy

exceeds $5,000,000.  <u>Abrego Abrego v. Dow Chem. Co.</u>, 443 F.3d 676, 685 (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").  This burden is not met by mere conclusory allegations; the defendant must prove existence of the jurisdictional amount.  <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996).  In this regard, the defendant must set forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy exceeds $5,000,000.[2]  <u>Abrego Abrego</u>, 443 F.3d at 689.

### A.    Applicable Standard of Proof

Plaintiffs argue that because their proposed SAC asserts that damages do not exceed $5,000,000, Defendants must prove to a "legal certainty" that the amount-in-controversy requirement has been met.  (ECF No. 7-1 at 11.)  Plaintiffs argue Defendants cannot claim the Renewed Motion notified them of the case's "removability" but then use the FAC, as opposed to the Plaintiffs' proposed SAC, to determine the amount in controversy.  (<u>Id.</u> at 8.)

Defendants counter, arguing that because Plaintiffs' Renewed Motion is ambiguous as to the actual amount in controversy, and because the operative FAC is silent on the issue, a preponderance of the evidence standard applies.  (ECF No. 11 at 13.)  Furthermore, Defendants contend Plaintiffs have mistakenly asserted that Defendants failed to consider the inherent limits of Plaintiffs' proposed SAC.[3]  (<u>Id.</u> at 18-19.)

---

[2] Plaintiffs argue that a case removed from state court under CAFA must be remanded unless the defendant shows there is at least one plaintiff whose claim or claims exceed $75,000.  (ECF No. 7-1 at 14.)  The Court, however, rejects this argument, as it is mass actions – not class actions – that limit federal jurisdiction to those plaintiffs whose individual claim or claims exceed $75,000.  <u>See</u> 28 U.S.C. § 1332(d)(11)(B)(i).

[3] Defendants maintain that the FAC is controlling but state that, "assuming *arguendo* that Plaintiffs' proposed [SAC] allegations are controlling . . . Defendants' calculations for the amount in controversy include only the claims that are at issue in Plaintiffs' proposed [SAC]."  (ECF No. 11 at 14.)

4

In Sanchez v. Monumental Life Ins. Co., the Ninth Circuit identified three burdens applicable to the amount in controversy that a Defendant must bear depending on the allegations in the operative complaint. 102 F. 3d 398, 403-04 (9th Cir. 1996). When a complaint alleges an amount in controversy sufficient to meet the federal jurisdiction threshold, it is presumptively valid unless it appears to a "legal certainty" that the plaintiff cannot recover that amount. Sanchez, 102 F.3d at 402; see also Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). When a complaint affirmatively alleges the amount in controversy is less than the jurisdictional requirement, the "party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1000 (9th Cir. 2007); see also Castillo v. Apple Core Enterprises, Inc., 2009 WL 2849124, at *1-2 (S.D. Cal. Sept. 1, 2009) (applying the legal certainty standard where complaint alleged "the amount in controversy does not reach or exceed five million dollars"). If the amount in controversy is unclear or ambiguous on the face of the complaint, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]." Sanchez, 102 F.3d at 404; see also Abrego Abrego, 443 F.3d at 683 (applying the preponderance of the evidence standard to complaint removed under CAFA which did not specify an amount-in-controversy).

Here, the operative state-court complaint is the FAC because Plaintiffs' motion for leave to file their proposed SAC was not decided by the state court. Plaintiffs' argument that Defendants should not be allowed to remove the action based on the Renewed Motion while ignoring the proposed SAC is unpersuasive. As stated in Plaintiff's Renewed Motion: "For purposes of this class certification motion, the meal period class allegations asserted in Plaintiff's Second, Third, and Fourth Causes of Action in Plaintiffs' FAC are the same as their counter-parts in the proposed SAC." (ECF No. 1-72 at 16 n.7.) Thus, Plaintiffs could have filed their Renewed Motion even

if they did not also seek leave to file a SAC.  That is, the Renewed Motion and the proposed SAC are not inextricably linked.

In any event, both the Renewed Motion and the FAC are "unclear or ambiguous" as to the amount in controversy.  Defendants therefore bear the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount.  See Sanchez, 102 F.3d at 404.  That is, Defendants must demonstrate it is "more likely than not" that the amount in controversy exceeds $5 million.  See id.

**B.    Evidence**

If the amount in controversy is not facially apparent from the complaint, "the court can consider facts in the removal petition, and may require parties to submit summary-judgment type evidence relevant to the amount in controversy at the time of removal."  Singer v. State Farm Mutual Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted).  "A Court may also consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice."  Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

While the FAC is ambiguous as to the amount in controversy, the Court nonetheless begins its analysis with the FAC, as the parties dispute whether Plaintiff has alleged a 100% violation rate as to Plaintiffs' meal period claims.  In their FAC, Plaintiffs allege that, "[w]ithin the four (4) years before the filing of this Complaint, in the course and scope of their employment as Mechanics, Plaintiffs have worked more than five (5) hours per day, but have not been provided full thirty (30) minute meal periods during each and every such work day."  (ECF No. 7-5 at ¶ 35 (emphasis added).)   In calculating the amount in controversy, the parties disagree on the interpretation of the phrase, "during each and every such work day."

The Court finds the phrase can be interpreted in at least two ways.  As Plaintiffs advance, the phrase may be interpreted to mean that auto mechanics were not always provided with meal periods on the days they worked.  And according to Defendants,

the phrase could be interpreted to mean that auto mechanics were not provided with meal periods <u>on any</u> of the days they worked.  With the rule in mind that "federal jurisdiction must be rejected if there is any doubt as to the right of removal," the Court construes this ambiguity in favor of Plaintiffs.  That is, the Court interprets the phrase "during each and every such work day" to mean that auto mechanics were not always provided with meal periods on the days they worked.  Thus, the Court will not assume a 100% violation rate in determining whether Defendants have satisfied the amount-in-controversy requirement.

Defendants submit a declaration by a Senior Human Resources Management System ("HRMS") Analyst regarding the electronic database that tracks Defendants' personnel information, including dates of hire, termination, and pay rates.  (ECF No. 1-7 at ¶ 1.)  The HRMS Analyst generated a report containing information about Defendants' California employees who were employed from November 27, 2002, through  June 15, 2012, as an "Auto Mechanic."  (<u>Id.</u> at  ¶ 3.)  This initial report supplied the most recent hire date, termination date, rehire date, and lowest and most recent hourly pay.  (<u>Id.</u>)  The HRMS Analyst submitted the initial report to the HRMS Manager who used this report to determine the number of days that each employee listed on the initial report worked more than six hours.  (ECF No. 1-8 at ¶ 3.)  The HRMS Manager only calculated dates from January 15, 2005, onward due to difficulty with the format of older data.  (<u>Id.</u> at ¶ 3, Ex. A.)  Defendants then multiplied the number of days between January 15, 2005, and June 15, 2012, that each employee worked six or more hours, by the employee's lowest hourly wage while employed during that period.  Finally, Defendants aggregated the amounts calculated for each employee to arrive at the amount of $5,711,140.91.  (ECF No. 1 at ¶ 64(c)(i).)

Defendants calculated Plaintiffs' claims for waiting time and wage statement penalties using similar methods.  (<u>Id.</u> at ¶ 64(c)(i)-(ii).)  Defendants first determined the number of employees whose penalty claims would not be barred by the statute of limitations.  Defendants then multiplied the greatest number of penalty days or pay

periods permitted for each employee by the appropriate penalty – a day's wages (up to 30 days) for waiting time penalties and $50 or $100 for wage statement penalties. Defendants arrived at the additional amount of $2,105,434.48, for a total amount in controversy of $7,816,575.39.

Defendants also assert that, based on similar cases, the Court should value Plaintiffs' remaining claims for attorney fees at $500,000. Defendants further assert that Plaintiffs' individual business expense reimbursement claims serve to bolster the amount in controversy.

Defendants claim the actual amount in controversy is much higher because their calculation (1) does not include any days employees worked 6 or more hours from the beginning of the putative class period; (2) does not include employees who worked more than five but less than six hours, warranting additional pay; and (3) only uses the employee's lowest hourly rate without addressing increases over time. (Id.)

Plaintiffs offer evidence of their own. Plaintiffs provide their own "Time Details," which show meal periods were sometimes provided, indicating something less than a 100% violation rate. Indeed, it appears from Plaintiffs' "Time Details," that Plaintiffs did themselves take several meal periods. How many, however, is unclear.

Weighing all the evidence together, the Court concludes Defendants have not met their burden of proving that it is more likely than not that the amount in controversy exceeds $5 million. Considering that Plaintiffs' "Time Details" indicate when meal periods were taken, the Court finds Defendants had the ability to approximate the actual number of missed meal periods to arrive at a more accurate violation rate. Instead, Defendants took the chance of relying on their interpretation of Plaintiff's FAC to calculate the amount in controversy using a 100% violation rate. Thus, the Court is left without sufficient evidence to determine the amount actually put into controversy by Plaintiffs' meal period claims. Without the ability to estimate the value of Plaintiffs' meal period claims, Defendants' penalty and attorney fees calculations (totaling approximately $2.6 million) are insufficient. And Defendants do

not attempt to value Plaintiffs' individual business expenses reimbursement claims. In sum, the Court finds Defendant's have failed to meet their burden of proving the amount in controversy exceeds the jurisdictional threshold.  Accordingly, the Court concludes it lacks jurisdiction over Plaintiffs' claims and must therefore grant Plaintiffs' Motion to Remand.

### CONCLUSION

After a careful review of the parties' submissions and the record in this matter, and for the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Remand is **GRANTED**, and the case is **REMANDED** to the San Diego Superior Court.[4]

DATED:  April 22, 2013

HON. GONZALO P. CURIEL
United States District Judge

---

[4] San Diego Superior Court case number GIC 876049.